ERNEST P. ROBITAILLE *vs.* DONALD G. MORSE & others.

Suffolk.    December 12, 1932, January 4, 1933. — May 22, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Actionable Tort.    Unlawful Interference.    Conspiracy.    Practice, Civil,*
Amendment after demurrer sustained, Election, Rule 23 of the Superior
Court (1932), Appeal. *Rules of Court.*

In a declaration in an action of tort against eight defendants, severally
engaged in the business of rendering grease, the plaintiff in substance
alleged that he was engaged in a profitable enterprise of purchasing
and collecting from homes, restaurants and other places waste parts
of meats having a grease content, called "grease," and selling the
"grease" to a rendering plant; that the defendants "with a view
toward and for the purpose of forcing the plaintiff out of his profitable
business and to deprive him of said business, and for their own selfish
gain and profit, did enter in a secret combination and conspiracy to
carry into effect by wrongful, illegal and fraudulent means . . . a
scheme contrived and designed to carry out the purpose above set
forth"; that pursuant to such scheme "they or some of them pur-
chased various rendering plants then in full operation and summarily
closed down said plants," thus reducing "the number of plants so as
to prevent collectors of grease from selling to any rendering plants
except those which were owned by the parties to the conspiracy";
made a so called "gentlemen's agreement" to refuse to deal with or
purchase from independent collectors except with the consent and
approval of the particular conspirators to whom in any instance the
independent collector was then selling; by unfounded and malicious
complaints made to the plaintiff attempted to procure for themselves
a lower price for the grease purchased from the plaintiff; and made
unwarranted and malicious attachments of the plaintiff's property
and other things of such a nature that the plaintiff was ultimately
forced to cease his dealings with said defendants and was prevented
from conducting his business; and "that because of the said con-
spiracy and the acts done by the defendants in pursuance thereof,
the plaintiff's business has been utterly ruined." Upon demurrers
by the defendants, it was *held,* that
   (1) There was nothing inherently unlawful in the alleged purpose
of the defendants to force "the plaintiff out of his profitable business
and to deprive him of said business, . . . for their own selfish gain
and profit"; the declaration alleged nothing inherently unlawful as
to the purpose of the conspiracy alleged to exist;
   (2) The allegation respecting the purchasing of plants in full opera-
tion and closing them down summarily to prevent the sale of grease

showed no illegal conduct of the defendants because there were no allegations showing that such conduct created a monopoly in restraint of trade;

(3) There being no allegation that "grease" is a commodity in general use or of a threat of intended or actual harm to the public, the mere allegation that the defendants by their conduct "acquired virtual control of and a commanding influence in the industry" did not aver a monopoly;

(4) The allegation respecting the "gentlemen's agreement" fell short of setting forth illegal conduct on the part of the defendants;

(5) The allegation respecting "unfounded and malicious complaints" did not set forth, with the other allegations, a cause of action;

(6) The allegation respecting wrongful and malicious suits was but a conclusion of law which depended upon a number of factors which did not appear in the declaration and did not show that the defendants' conduct was illegal;

(7) The allegation respecting unlawful interference with the plaintiff's business in that there was a refusal to deal with the plaintiff unless other defendants consented to such dealings showed no illegal conduct on the part of the defendants;

(8) The declaration considered as a whole did not show a combination of the defendants having a purpose to injure the plaintiff malevolently, nor did any of the means alleged to have been used by the defendants show any form of wrong for which the law gives the plaintiff a right of action.

Where, after the sustaining by the Superior Court of a demurrer to a declaration, the plaintiff did not within ten days move to amend his declaration under Rule 23 of the Superior Court (1932), this court *held* that he had elected to stand on his declaration in the form· in which it was before the Superior Court and, having decided that the demurrer was sustained rightly, ordered judgment for the defendants.

TORT. Writ dated August 28, 1931.

The declaration and the demurrers of the defendants are described in the opinion.

The demurrers were heard in the Superior Court by *Whiting*, J., who ordered them sustained. The plaintiff appealed.

*E. M. Dangel, G. Alpert, & H. Feldman,* for the plaintiff, submitted a brief.

*L. A. Mayberry,* (*H. L. Barrett* with him,) for the defendants Donald G. Morse and another.

*J. P. Rooney,* for the defendants Consolidated Rendering Company and another.

*A. L. Taylor,* (*E. C. Parks* with him,) for the defendants John Reardon & Sons Company and another.

*John F. Sullivan,* for the defendant Hinckley Rendering Company, submitted a brief.

PIERCE, J.   This is an action of tort brought against eight defendants to recover damages resulting from an alleged conspiracy to force the plaintiff out of a profitable business and to deprive him of said business for their own selfish gain and profit.   The case is before this court on the plaintiff's appeals from orders sustaining the defendants' several demurrers to the plaintiff's declaration.

The declaration alleges in a single count that the plaintiff as an independent collector was engaged for many years, at a very substantial profit, in the business of purchasing and collecting from restaurants, homes and other places waste parts of meats and other substances having a grease content; that in the trade in which the plaintiff has been so engaged said substances are called "grease"; that said grease when purchased and collected by the plaintiff or others in his employ was carted in trucks to a rendering plant and there sold; that shortly prior to February, 1931, "the individuals and corporate defendants, being engaged in the business of rendering grease, with a view toward and for the purpose of forcing the plaintiff out of his profitable business and to deprive him of said business, and for their own selfish gain and profit, did enter into a secret combination and conspiracy to carry into effect by wrongful, illegal and fraudulent means . . . a scheme contrived and designed to carry out the purpose above set forth"; that pursuant to said conspiracy "the defendant[s] first set about to gain control of the grease rendering trade in New England and to accomplish said purpose they or some of them purchased various rendering plants then in full operation and summarily closed down said plants.   By this means, they reduced the number of plants so as to prevent collectors of grease from selling to any rendering plants except those which were owned by the parties to the conspiracy"; that "Thereafter, having acquired virtual control of and a commanding influence in the industry, said defendants proceeded to exercise said control, influence and power for the destruction and injury of the plaintiff's business.   This

was accomplished in the first instance by a so called 'gentlemen's agreement' entered into between the parties to the conspiracy by virtue of which each agreed to refuse to deal with or purchase from independent collectors except with the consent and approval of the particular conspirators to whom in any instance the independent collector was then selling. The purpose and consequence of this arrangement was that the independent contractors in general and the plaintiff in particular were at the complete mercy of the particular party to the conspiracy with whom they happened at the time to be doing business"; that "At the time the conspiracy above referred to was entered into, the plaintiff was selling large quantities of grease to certain of the defendants. After the conspiracy was entered into and in pursuance thereof, said defendants by unfounded and malicious complaints made to the plaintiff attempted to procure for themselves a lower price for the grease purchased from the plaintiff. As part of this attempt, said defendants made unwarranted and malicious attachments of the plaintiff's property and other things of such a nature that the plaintiff was ultimately forced to cease his dealings with said defendants and was prevented from conducting his business. He thereafter attempted to sell grease to others of the conspirators, but solely because of the unlawful agreement entered into between the defendants and above referred to, the plaintiff was unable to sell, and is still unable to sell, the grease to any of them"; and "the plaintiff says that because of the said conspiracy and the acts done by the defendants in pursuance thereof, the plaintiff's business has been utterly ruined, for which he claims damages." The demurrers of the several defendants were sustained on two grounds: (1) "That said declaration does not state a legal cause of action"; and (2) "That the said declaration does not state concisely and with substantial certainty the substantive facts necessary to constitute a legal cause of action against these defendants, substantially in accordance with the requirements of G. L. c. 231.

The declaration does not allege that the acts of the de-

fendants were merely joint acts causing harm to the plaintiff's property, but alleges that the acts were done by the defendants in "secret combination and conspiracy to carry into effect by wrongful, illegal and fraudulent means" a scheme to force "the plaintiff out of his profitable business and to deprive him of said business." The declaration alleges "that because of the said conspiracy and the acts done by the defendants in pursuance thereof, the plaintiff's business has been utterly ruined." This court has held that "in some circumstances, if persons who possess peculiar powers of coercion or who stand in certain fiduciary relations with another combine to accomplish an illegal act, or a legal act by illegal means to be exerted against that other, an actionable tort may arise for which they may jointly or severally be held liable." *Loughery* v. *Central Trust Co.* 258 Mass. 172, 176. If it be assumed that conspiracy is the gist of the action and that the declaration in the final analysis does not allege that the acts were merely joint acts causing harm to the plaintiff but non-actionable without the combination, the fundamental question is whether this alleged combination overstepped legal bounds in the object sought or the means used to carry it out. *Commonwealth* v. *Hunt*, 4 Met. 111, 123. *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45, 56. *Willett* v. *Herrick*, 242 Mass. 471, 478. The object of the alleged conspiracy as stated in the declaration was to force "the plaintiff out of his profitable business and to deprive him of said business, and for their own selfish gain and profit." There is nothing inherently unlawful in such a purpose and the accomplishment of it does not necessarily involve any act or conduct which is not entirely justifiable and often results from a course of proceeding that the law permits in the competition or carrying on of business. The defendants had a right to build up their own business for "their own selfish gain and profit" and no legal responsibility necessarily resulted from their acts or conduct in doing this, even though as an incident to the accomplishment of their purpose and object it was a necessary result that the plaintiff should be forced out of business. *Bowen* v. *Mathe-*

*son,* 14 Allen, 499, 503, 504. *Plant* v. *Woods,* 176 Mass.
492, 500, 501. *Martell* v. *White,* 185 Mass. 255, 259.
*Macauley Brothers* v. *Tierney,* 19 R. I. 255, 259. *Mogul
Steamship Co. Ltd.* v. *McGregor, Gow & Co.* [1892] A. C. 25.
*Sorrell* v. *Smith,* [1925] A. C. 700, 746, 748. An illegal
primary object or purpose is not made out under the law
simply because one of the purposes in seeking to secure a
trade advantage by a combination is the destruction and
ruin of the business of another. It is necessary that such
a purpose should be the primary object of the combination
entered into with the malicious intention of damaging the
plaintiff, and that the means used should cause his damage.
See *Commonwealth* v. *Hunt,* 4 Met. 111; *Walker* v. *Cronin,*
107 Mass. 555, 564; *Martell* v. *White,* 185 Mass. 255, 257,
258; *Holbrook* v. *Morrison,* 214 Mass. 209, 211; *Beardsley*
v. *Kilmer,* 236 N. Y. 80, 88. The declaration therefore
alleges nothing inherently unlawful as to the purpose of
the conspiracy alleged to exist.

As to the means used to accomplish the end desired the
plaintiff complains of the following acts:

1. Purchasing plants in full operation and closing them
down summarily to prevent the sale of grease. Obviously
any one or all of the defendants had a right to purchase
additional plants, and, if they saw fit, to close them for the
purpose of eliminating competition or of aiding in econom-
ical operation, and they had the right to utilize the machin-
ery or equipment of such plants, to make use of the
land or buildings for some other purpose, or for any reason
thought sufficient. There is nothing illegal *per se* in the
purchasing of rendering plants and closing them which
does not extend to the purchase and resale of all mechanical
and mercantile plants. The plaintiff's declaration does not
allege any facts which proved would show that the pur-
chase and closing of the particular rendering plants was
invalid as against public good. *Robbins* v. *Plant,* 174 Ark.
639, 643. *Oliver* v. *Gilmore,* 52 Fed. Rep. 562. The con-
duct of the defendants in this regard would be illegal only
in the event that purchase and closing of the plants created

a monopoly in restraint of trade.   The only allegation in the declaration in this respect is that the defendants "acquired virtual control of and a commanding influence in the industry."   There is no allegation of monopoly, and there is a lack of allegation of two of the essential elements of monopoly, (1) that "grease" is a commodity in general use and (2) a threat of intended or actual harm to the public. *Gloucester Isinglass & Glue Co.* v. *Russia Cement Co.* 154 Mass. 92, 94.   *Quincy Oil Co.* v. *Sylvester,* 238 Mass. 95, 97.   *Commonwealth* v. *Dyer,* 243 Mass. 472, 486.   *Keith* v. *Heywood Boot & Shoe Co.* 255 Mass. 321, 324.

2. Refusal to deal with independent contractors except on certain conditions.   The plaintiff concedes that "If the primary motive of the defendants was to build up their own business, refusing to trade with the plaintiff is justified," but says that the refusal so to deal was illegal since their motive was to drive the plaintiff out of business.   *Vegelahn* v. *Guntner,* 167 Mass. 92, 99.   The declaration alleges that the defendants' purpose was accomplished by a "so called 'gentlemen's agreement' entered into between the parties to the conspiracy by virtue of which each agreed to refuse to deal with or purchase from independent collectors except with the consent and approval of the particular conspirators to whom in any instance the independent collector was then selling."   It is elementary that any person or any number of persons have the right at any time either singly or in concert to suspend for a time or abandon entirely their business relations with any other person though such conduct results in the injury to the business of such other, subject only to the qualifications that the injury inflicted by the exercise of their rights on the business of another must have the justification of competition or of self-interest and advancement, and that they do not exercise that right in any illegal manner.   *Sorrell* v. *Smith,* [1925] A. C. 700. *Macauley Brothers* v. *Tierney,* 19 R. I. 255.   *Carew* v. *Rutherford,* 106 Mass. 1.   There is nothing in the facts alleged in the declaration which brings this case within *Martell* v. *White,* 185 Mass. 255, 261.   See *Bowen* v. *Mathe-*

*son,* 14 Allen, 499; *Carew* v. *Rutherford,* 106 Mass. 1, 14, 15; *Beekman* v. *Marsters,* 195 Mass. 205, 211, 212; *Bohn Manuf. Co.* v. *Hollis,* 54 Minn. 223.

3. Malicious complaints to procure lower prices. The declaration in this respect reads: "After the conspiracy was entered into and in pursuance thereof, said defendants by unfounded and malicious complaints made to the plaintiff attempted to procure for themselves a lower price for the grease purchased from the plaintiff." We cannot see how such conduct could bring about the harm to the plaintiff of which he complains. The alleged offence is not within G. L. (Ter. Ed.) c. 265, § 25; nor since there was no publication within *Lawrence Trust Co.* v. *Sun-American Publishing Co.* 245 Mass. 262, 266.

4. Wrongful and malicious suits. The declaration alleges no specific fact beyond the mere statement that the attachments were wrongful and malicious. This allegation is but a conclusion of law which depends upon a number of factors that do not appear in the declaration. There are no facts stated from which it can be determined whether the process used was legal or illegal; whether the defendants had valid claim against the plaintiff or had reason to believe they had such claim; whether the attachments were excessive, or whether if they were proper there was abuse in the manner in which they were carried out. See *Wood* v. *Graves,* 144 Mass. 365. *Zinn* v. *Rice,* 154 Mass. 1. *Malone* v. *Belcher,* 216 Mass. 209.

5. Unlawful interference with the plaintiff's contracts with collectors in that there was a refusal to deal with the plaintiff unless other defendants consented to such dealings. 6. Forcing the change of prices. In respect to the means used by the defendants posited by the plaintiff under complaints "5" and "6" it is sufficient to say that the declaration alleges no facts which state a cause of action for malicious interference with the performance of any contract of the plaintiff, or any act or series of correlated acts designed or executed by the defendants for the purpose of forcing the plaintiff to change his prices.

The declaration considered as a whole does not show a

combination of the defendants having a purpose to injure the plaintiff malevolently, nor do any of the means used by the defendants show any form of wrong for which the law gives the plaintiff an action. The declaration does not state a cause of action "concisely and with substantial certainty," G. L. (Ter. Ed.) c. 231, § 7, Second, nor, disregarding form, does it state a cause of action in substance good. Under Rule 23 of the Superior Court (1932) the plaintiff could have moved to amend his declaration within ten days from the sustaining of the demurrers. Because no such motion was filed it is inferable that the plaintiff elected to stand on his declaration in the form in which it was before the Superior Court. We think the plaintiff should be held to have made the election. *Cheraska* v. *Ohanasian*, 259 Mass. 341, 344. *Morrill* v. *Crawford*, 278 Mass. 250.

It follows that the orders sustaining the demurrers are affirmed and judgment is to be entered for the defendants.

*So ordered.*