## No. 9218.

### BURNS *v*. WRAY FARMER'S GRAIN COMPANY.

1. CORPORATIONS—*By-Laws*—*Validity,* is determined by the same tests as the validity of a contract.
2. ——*Restraint of Trade.* It is not necessary to the invalidity of a

by-law that it was deliberately framed with the intent to suppress competition.

Nor that its result is a monopoly.

The by-laws of a corporation dealing in grain provided that any stockholder selling grain to a competitor of the corporation should pay to it one cent upon each bushel so sold. *Held* an unreasonable restraint of trade.

*Error to Yuma District Court, Hon. H. P. Burke, Judge.*

Mr. LOUIS HENKE, for plaintiff in error.

Mr. M. M. BULKLEY, for defendant in error.

Opinion by Mr. Justice Allen:

THIS is an action brought by The Wray Farmers' Grain Company, a corporation, against one of its stockholders, to recover a sum of money alleged to be due to the corporation under the provisions of a certain by-law of the company. The plaintiff obtained a judgment, and the defendant brings error.

The main question presented for our determination is the validity of the by-law upon which the plaintiff's right to recover is predicated.

It is proper, at the outset, to note the following admitted and undisputed facts:

The plaintiff is a corporation, organized under the laws of Colorado, and having its principal place of business and its office in the town of Wray, Colorado. Its business is that of buying, selling and storing grain, and dealing in hogs and in coal. It buys and sells to "members and non-members." The capital stock of the plaintiff corporation is divided into 400 shares of $25 each. There are 230 stockholders. The defendant is a farmer residing near the town of Wray, and owns two shares of the capital stock. The following is a by-law of the plaintiff, being the by-law which is involved in this controversy:

"The stockholders of this company may sell grain to competitors in Wray, only, by paying to the secretary of The Wray Farmers' Grain Company, the sum of one cent per

bushel for each bushel of grain so sold, as his proportional share of the maintenance of the company; provided grain sold to local feeders and grain sold for seed for use in our immediate locality, which shall be exempt from penalty. If any stockholder is found guilty of avoiding this by-law, his stock shall be liable to forfeiture in this corporation."

The foregoing by-law was regularly adopted by the plaintiff Grain Company at a meeting of the stockholders, at which meeting defendant was present, and assented to the adoption of this by-law. While the by-law in question was in full force and effect, the defendant sold and delivered about 3,500 bushels of wheat to a competitor of the plaintiff in the town of Wray.

Under the by-law above quoted the plaintiff below claims the right to recover from the defendant the sum of $35 on account of his having sold 3,500 bushels of grain to plaintiff's competitor in Wray, the by-law providing that a stockholder selling to such competitor shall pay to the Grain Company "the sum of one cent per bushel for each bushel of grain so sold."

It was contended by the defendant in the trial court, as it is contended here, that the by-law above quoted is invalid as being "in restraint of trade," that it "tends to stifle competition" and "is contrary to public policy." The trial court held the by-law valid, evidently upon the ground appearing in the following remark of the trial judge: "I find nothing in that contract (by-law) which is an unreasonable restraint of trade."

Both parties treat the by-law in question from the standpoint of a contract, applying to it the same tests as are applied in determining the validity of contracts. The method thus taken is undoubtedly proper. Numerous by-laws not repugnant to public policy have been upheld as reasonable, and, on the other hand, by-laws operating in restraint of trade have been held invalid. 7 R. C. L. 146, sec. 118.

The validity of the by-law in the instant case is questioned, and therefore must be determined, solely with re-

gard to whether or not it is in such restraint of trade as to be contrary to public policy.

"The question is thus reduced to the inquiry whether at common law the contract here involved is violative of any canon of public policy. In considering this question, much confusion may be avoided by marking the distinction not always observed in the adjudicated cases between those contracts which, since the earliest history of the law on the subject, have been designated as 'contracts in restraint of trade,' and those more correctly designated as 'contracts in restraint of competition.' The term 'contracts in restraint of trade' has so long been applied to undertakings not to pursue a particular profession, trade, or business, and has so thoroughly acquired that conventional significance as to render its use in any other connection confusing. The rules relating to such contracts are of long standing and thoroughly established."

*Fisher Flouring Mills Co. v. Swanson*, 76 Wash. 649, 137 Pac. 144, 51 L. R. A. (N. S.) 522.

The law in this state as to the class of contracts last mentioned in the foregoing quotations has been announced in *Freudenthal v. Epsey*, 45 Colo. 488, 102 Pac. 280, 26 L. R. A. (N. S.) 961, and in *Barrows v. McMurtry Mfg. Co.*, 54 Colo. 432, 131 Pac. 430. If the by-law now under consideration, properly treated as a contract, is in restraint of trade in the broad sense, it does not belong to that class of contracts which was dealt with in the two Colorado cases above cited, but belongs to that class described in 2 Elliott on Contracts, 125, sec. 790, as follows:

"One class of contracts in restraint of trade consists of such as tend or are designed to destroy or stifle competition, effect a monopoly, artificially maintain prices, or by other means hamper or obstruct the course of trade as it would be carried on if left to the control of the natural law governing trade or commerce."

Both classes of contracts, when unreasonable and to the injury of the public, are alike illegal and against public

policy. The illegality of a contract or combination for the restraint of competition does not lie in the agreement not to compete, but in its reflex injury to the public. 6 R. C. L. 787, sec. 191. The rule inhibiting interference with public interests invalidates contracts the tendency of which is to lessen competition. 13 C. J. 480, sec. 423. In *Barrows v. McMurtry Mfg. Co., supra,* it was said:

"The law looks with high disfavor upon any condition which tends to stifle the free and unimpeded course of competitive buying and selling in the open market of commodities which are necessities, and contribute to the general comfort and well being of humanity."

A restriction upon competition is not necessarily illegal, and the existence of the element of combination in no way necessarily involves the existence of an illegal restriction upon competition. Cook on Combinations, etc., sec. 135, p. 271. In *Flouring Mills v. Swanson, supra,* it was said:

"Those engaged in any trade or business may, to such limited extent as may be fairly necessary to protect their interests, enter into agreements which will result in diminishing competition and increasing prices. Just the extent to which this may be done the courts have been careful not to define, just as they have refused to set monuments along the line between fairness and fraud."

Each case in which the question of reasonableness of restraint arises must be determined according to its own particular facts. 13 C. J. 475. In Cook on Combinations, etc., sec. 133, p. 267, it is said:

"The proper answer to the further question what constitutes reasonableness may be that the restriction is reasonable and therefore not illegal if 'the public is not injured' thereby. Obviously, however, so broad and general a test is incapable of very close application, each case that arises being left to 'be decided upon its own merits' and upon the particular circumstances developed."

From the circumstances just indicated, it follows that numerous authorities may be cited and discussed in support

of the contention on either side in the instant case, with the possibility that no one of them, even if fully approved, would be decisive of the case at bar.

We find, however, that the Supreme Court of Iowa, in two cases, has decided practically the same identical question which is presented in the instant case. The first of these cases is *Reeves v. The Decorah Farmers' Co-operative Society*, 160 Iowa 194, 140 N. W. 844, 44 L. R. A. (N. S.) 1104, decided April 10, 1913. In that case the defendant society was a corporation organized for the purpose of buying, selling and shipping hogs at the town of Decorah, Iowa. There were 350 individual stockholders, composed of farmers living in the vicinity of Decorah. The corporation had a by-law, similar in its effect to the by-law involved in the instant case. The by-law there was in the following language:

"In order to insure future success and prosperity of this society, its members and shareholders are required to sell all their marketable produce and live stock to the society. Any member or stockholder who may prefer to sell his produce or live stock to a competitor in this market shall forfeit to the company and pay over to its treasurer, from the proceeds received for produce or live stock so sold to other firms or competitors, the amount as follows: Five cents for every one hundredweight sold to any competitor."

The foregoing by-law was held by the court to be invalid as being in "undue restraint of competition." The court, after citing and reviewing a number of authorities on combinations and contracts in restraint of trade and of competition, uses the following language in reaching its conclusion:

"So long as competition is regarded as the life of trade, all combinations, contracts, arrangements, or agreements made to stifle it, or which may have that effect, are regarded as unlawful, save as heretofore stated, where connected incidentally with some other contract as of purchase or sale or with contracts of employment, etc., so long as

such restraints are reasonable and just. But, where disconnected with some other contract and made enforceable by fine or penalty, we think they come within the ban of the law.

True, it is that each of the members of this association might have concluded not to sell any of his hogs to the plaintiff, and, perhaps, all might have agreed in advance not to do so. This would have been freedom of trade. But here there is freedom of trade in form, but annexed thereto is a fine or penalty for exercising such freedom. This is restraint of trade, or rather restraint of competition. That such fine or penalty made the society an' illegal one is to our minds too clear for argument. Plaintiff (a competitor of the association) was placed at a disadvantage and could not compete with the society in purchasing hogs from its members, and the members were not free to deal with plaintiff. If they dealt with him, he either forfeited his profits, by reason of having to pay too much for his hogs, or they forfeited a part of the purchase price as a penalty for selling to another. To our minds, this was undue restraint of competition, or, as the term is now understood, 'restraint of trade.' "

The foregoing expressions of the Iowa court are each and all as fully applicable to the facts in the instant case as to the facts in the Iowa case. Here as there the combination is that of farmers, as stockholders in a corporation, agreeing in a by-law not to sell their products to a competitor of their company in the town where it does business. In both cases the by-law imposes a penalty for its violation.

. Under the admitted facts in the instant case, the corporation "has paid dividends to its stockholders each year since its organization," while in the Iowa case the testimony was that the society "was formed primarily as a selling agency," and that there "was no purpose to distribute a dividend." From this it appears that the by-law in the instant case is less necessary as a fair protection to the stockholders than

it was in the Iowa case, and therefore the restraint would be unreasonable in a greater degree than it was in that case.

We need not assume that the stockholders of The Wray Farmers' Grain Company deliberately entered into a scheme or combination, by means of this by-law, for the purpose of preventing any other grain buyer from doing business in Wray. The by-law would be invalid without proof of this intent. Neither is it necessary to find that competition has actually been stifled. In *Anderson v. Shawnee Compress Co.*, 17 Okla. 231, 87 Pac. 315, 15 L. R. A. 846, it is said:

"Nor, in order to vitiate a contract, is it essential that its results should be a complete monopoly; it is sufficient if it really tends to that end and to deprive the public of the advantages derived from free competition."

From the agreed statement of facts filed in this case the tendency of the by-law to stifle competition is manifest. It is practically impossible for a competitor of the plaintiff company in Wray to secure the patronage of the 230 existing stockholders in the Grain Company. The number of such stockholders may increase, since there are 400 shares of capital stock. Such stockholders may comprise all or nearly all of the farmers residing in the vicinity of Wray. If these farmers do not want to sell grain to their own company, they are allowed to sell to any competitor outside of Wray, but not to any competitor in Wray, unless they pay the penalty of one cent per bushel for each bushel of grain so sold in Wray. It follows that they will not sell to a competitor in Wray unless they receive one cent or more per bushel more than what is offered by their own company. The competitor must offer this additional amount or else lose the business. The by-law, if enforced, unquestionably would tend to drive out of business any other grain buyer in Wray and give the plaintiff company a monopoly. This effect renders the by-law unreasonable.

There is another feature of the by-law which makes it unreasonable. That is its restriction upon the stockholders

themselves. They are restricted in their right to sell their product to whomsoever they please, and there is an absence of circumstances which renders such restriction fairly necessary for their own protection. According to the by-law, they are required to sell to no grain buyer in Wray, which is their nearest and most convenient place of market, except to The Wray Farmers' Grain Company. If they violate this agreement they are subject to the penalty prescribed in the by-law.

The unreasonableness in the two respects above noted is due to the resulting injury to the public, which injury is assumed to exist or be inflicted under circumstances of this kind according to the well settled doctrines having to do with public policy. Our conclusion in this case, as well as the conclusion of the Iowa court, is amply supported by numerous adjudications upon contracts surrounded by facts somewhat analogous to those existing in the case at bar.

In the case of *People v. Chicago Live Stock Exchange,* 170 Ill. 556, 48 N. E. 1062, 39 L. R. A. 373, 62 Am. St. Rep. 404, the court held invalid a by-law of the Chicago Live Stock Exchange which prohibits members from employing trade solicitors not members of the association and which limits the number of solicitors which may be employed by members in certain states. In that case the court said:

"Combinations and associations of men have no right to place restrictions upon the right of an individual to contract and engage in business, employing such means and agencies as are not prohibited by law. The natural flow of trade and commerce must be unrestricted, and men engaged therein may accelerate its current by all means not unlawful. * * * Efforts to prevent competition and to restrict individual efforts and freedom of action in trade and commerce are restrictions hostile to the public welfare, not consonant with the spirit of our institutions and in violation of law. * * * Attempts to place restrictions on trade and commerce and to fetter individual liberty of

action by preventing competition are hostile to public welfare and affect the interests of the people."

In 19 R. C. L. 36, sec. 20, it is said:

"Every contract, combination or arrangement whose direct purpose, probable effect, or necessary tendency is to stifle or unduly to restrict competition is unlawful, at common law and by statute."

Among cases more or less supporting the Iowa cases herein discussed may be cited the following: *Inter-Ocean Pub. Co. v. Associated Press,* 184 Ill. 438, 56 N. E. 822, 48 L. R. A. 568, 75 Am. St. Rep. 184; *United States v. Addyston Pipe, etc., Co.,* 85 Fed. 271, 29 C. C. A. 141, 46 L. R. A. 122; *Anderson v. Jett,* 89 Ky. 375, 12 S. W. 670, 6 L. R. A. 390; *Arnold v. Jones,* 152 Ala. 501, 44 So. 662, 12 L. R. A. (N. S.) 150; *Martell v. White,* 185 Mass. 255, 69 N. E. 1085, 64 L. R. A. 260, 102 Am. St. Rep. 341.

The doctrine or ruling of *Reeves v. Decorah Farmers' Cooperative Society, supra,* the Iowa case above discussed was reaffirmed in *Ludowese v. Farmers' Mutual Cooperative Company,* 164 Iowa 197, 145 N. W. 475. In the latter case the by-law imposed a penalty upon the stockholder if he sold grain or live stock to a competitor of his company, the penalty as to grain being one cent per bushel, as in the case at bar. The court held that "the by-law was clearly in restraint of competition and therefore illegal." It further announced that it adheres to its decision in the Reeves case.

The decision in these Iowa cases is criticised by the defendant in error, the plaintiff below, on the ground that the Iowa court "did not consider the proposition as to whether the by-law was a reasonable or unreasonable restraint of trade." True, there is no direct expression upon this point: Nevertheless, the doctrine as to reasonableness was in the mind of the court, and regarded as a settled proposition, since the court in one part of the opinion uses this language:

"Again, the doctrine of restraint as applied to the early

cases has been broadened, and all contracts in unreasonable restrain of competition are now understood to be in restraint of trade."

In our opinion the decisions in the Iowa cases above cited are sound, and for the reasons above indicated we hold the by-law involved in the instant case void and illegal as being in undue restraint of competition. The cause is therefore reversed and remanded with directions to dismiss the case.

*Reversed.*

Decision *en banc.*