## No. 11,460.

### Monte Vista Potato Grower's Co-operative Association *v.* Bond, et al.

Decided January 24, 1927.

Action in injunction.   Injunction dissolved as to defendant James Bond.

### *Reversed.*

1.  Injunction—*Final Judgment.*   The granting of a permanent injunction is a final and conclusive judgment.

2.  Judgment—*Setting Aside.*   Under the facts disclosed in the instant case, it held, that before the judgment granting a permanent injunction could be set aside, if at all, there should have been a compliance with the provisions of section 81 of the Code.

3.  Contract—*Marketing—Conspiracy—Injunction.*   If there is a conspiracy between a party to a contract with a marketing association, and another to escape the obligations of the contract, injunction is properly granted against both.

4.  Marketing Contract—*Breach—Liability.*   One may not knowingly and designedly join in an attempt to breach a marketing contract and escape liability on the grounds that he was not a member of the association and not a party to the contract.

5.  *Legislation—Presumption.*   It is within the power of the legislature to provide a rule of conclusive presumption in actions on marketing contracts, to the effect that the landowner, landlord or lessor is able to control the delivery of products produced on his land, and against such presumption he may not plead or prove any fact tending to show that he did not have such control.

*Error to the District Court of Rio Grande County, Hon. Jesse C. Wiley, Judge.*

Messrs. Lindsey & Larwill, Messrs. Corlett & Corlett, for plaintiff in error.

Mr. JAMES P. VEERKAMP, for defendants in error.

*Department Three.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

DURING the summer of 1923 the defendant, W. A. Bond, entered into a written agreement, known as a marketing contract, with the plaintiff, of which he was a member, which provided, among other things, that the association agreed to buy, and Bond agreed to sell and deliver to the association, all of the potatoes produced or acquired by or for him in Colorado, during the years 1923 to 1927, inclusive, except such as he might reserve for seed, feed and family use, or for sale at retail locally for immediate local consumption; that Bond should have the right to stop growing potatoes and grow anything else at any time at his free discretion, but if he produced any potatoes during that period, all such should be included under the terms of the agreement; that Bond should not be compelled to deliver any specified quantity of potatoes per year, but that he should deliver all the potatoes produced or acquired by or for him, except those reserved as above mentioned, and that the association should have title to all such potatoes upon delivery thereof; that the agreement should be binding upon Bond as long as he produced potatoes directly or indirectly, or had the legal right to exercise control of any commercial potatoes, or any interest therein during the term of the contract. It was further provided in the contract that Bond was to pay the association twenty per cent of the current market value of all potatoes which he failed to sell and deliver in accordance with the terms of the contract, as liquidated damages for the breach thereof; that the association should be entitled to an injunction to prevent breach of the contract, and that Bond should pay a reasonable attorney's fee for any litigation growing out of the con-

tract. The contract between plaintiff and defendant, W. A. Bond, contained other provisions usually found in the ordinary and usual marketing contracts.

On April 19, 1924, defendant, W. A. Bond, entered into a "contract for lease" with defendant, James Bond, the father of W. A. Bond, which contract purported to lease to James Bond forty acres of land for the year 1924 to be planted to potatoes by James Bond, the consideration to be paid for the rental of the land being $10 per acre.

This suit was brought by the plaintiff against defendants for an accounting, for the recovery of damages and for a temporary and permanent injunction to restrain defendants from conspiring together for the violation of the marketing contract, and for other appropriate relief. A preliminary injunction and temporary restraining order were granted October 2, 1924. On October 8, 1924, James Bond filed his motion for an order dissolving the preliminary injunction, claiming that he had never been a member of the plaintiff association, had never had a contract with it, and that the potatoes he had sold, which were raised on the land leased from W. A. Bond, were his own individual property.

On October 20, 1924, the motion of James Bond to dissolve the temporary injunction was heard upon the pleadings and evidence, and the court found that James Bond knew that W. A. Bond had entered into the marketing contract with the plaintiff at the time the contract between W. A. Bond and James Bond was entered into, denied the motion to dissolve the temporary injunction, and made the injunction permanent. Motion for new trial was dispensed with, defendant James Bond gave notice of appeal, and sixty days were allowed in which to tender a bill of exceptions. This judgment was rendered at the May, 1924 term of court.

On November 15, 1924, at the following or November term of the court, the motion to dissolve the injunction was reopened and further argument permitted by the court. At this hearing plaintiff was allowed to put in its

remaining evidence as to the amount of its damage. No other evidence was introduced. This reopening of the motion to dissolve the injunction appears to have been upon the court's own motion; at least the record does not disclose that either party made application for the same.

On January 10, 1925, the court found that the judgment entered on October 20, 1924, making the preliminary restraining order and temporary injunction permanent, should be set aside in so far as James Bond was concerned, and that the injunction should be dissolved, and rendered judgment accordingly. The court at that time also rendered judgment against defendant W. A. Bond for liquidated damages and attorney fees, cost of bond and costs of suit, and that the injunction entered against him be made permanent. Plaintiff brings the case here for review.

Upon the hearing of James Bond's motion to dissolve the injunction, he testified: "Q. You knew your son was a member of this Association before you entered into this contract, didn't you? A. Yes, sir, I knew he was a member. Q. And you entered into it for the purpose of attempting to escape this contract? A. I did."

Section 19, chapter 142, subdivision C, Session Laws 1923, provides: "In any action upon such marketing agreement, it shall be conclusively presumed that a landowner or landlord or lessor is able to control the delivery of products produced on his land by tenants or others, whose tenancy or possession or work on such land or the terms of whose tenancy or possession or labor thereon were created or changed after execution by the landowner or landlord or lessor, of such a marketing agreement; and in such actions, the foregoing remedies for non-delivery or breach shall lie and be enforceable against such landowner, landlord or lessor."

1. There was no compliance nor attempted compliance with section 81 of the Code, for the setting aside of the judgment rendered on October 20. No showing was

made as required by that section that defendant James Bond had been unable to apply for a reopening of the judgment during the term at which it was rendered; nor does it appear that he made any application at all. The judgment was a final and conclusive one, and both parties and the court so recognized it. 32 C. J. sec. 657, p. 387; *City of Denver v. Lobenstein,* 3 Colo. 216.

It is equally clear that before the judgment could be set aside section 81 of the Code must be complied with. *Morrell H. Co. v. Princess G. M. Co.,* 16 Colo. App. 54, 63 Pac. 807; *Empire Construction Co. v. Crawford, et al.,* 57 Colo. 281, 290, 141 Pac. 474; *Woffenden v. Woffenden,* 1 Ariz. 328, 25 Pac. 666.

2. But aside from the other question the equities of this case seem to be wholly with the plaintiff. The court must have found, in making the injunction permanent against both defendants, and there was ample evidence to sustain the finding, that there was a conspiracy between James and W. A. Bond, and that the arrangement entered into between them concerning the leasing of the land by W. A. Bond to his father, James Bond, was a mere subterfuge to enable W. A. Bond to breach his contract with the plaintiff. The testimony of James Bond sufficiently establishes this, but there was other evidence tending to prove the fact.

If the arrangement between W. A. and James Bond was entered into for the purpose of assisting W. A. Bond to escape the obligations of his contract with the plaintiff, then certainly the injunction was properly made permanent against both defendants, and should not have been dissolved as to James Bond.

James Bond could not, knowingly and designedly, join with his son in a wrongful and unlawful attempt to breach W. A. Bond's contract with plaintiff, and himself escape liability on the ground that he was not a member of the association, and not a party to the contract. *Hollingsworth v. Texas Hay Ass'n* (Tex. Ct. App. 1922–1923) 246 S. W. 1068. Furthermore, the section of the statute

quoted creates a conclusive presumption that the lessor is able to control the delivery of products raised on his land by tenants or others.

It has been held that it is within the power of the Legislature to provide such rule of conclusive presumption, and as such a presumption cannot be overcome by contrary proof, the effect of the provision is to put it out of the power of either landlord or tenant, lessor or lessee, to plead or prove any fact tending to show that the landlord or lessor did not have such control. *Feagain v. Dark Tobacco Growers Co-operative Ass'n,* 202 Ky. 801, 261 S. W. 607.

In the circumstances shown by the record, we are convinced that the court erred in setting aside its judgment rendered on October 20, 1924, and that the same should be reinstated. We think also that the defendant James Bond is equally liable with W. A. Bond for the damage sustained by plaintiff, on account of W. A. Bond's violation of his contract with plaintiff, and that judgment should be entered against them jointly for the damage sustained.

Judgment reversed with instructions to the trial court to proceed in harmony with the views herein expressed.

Mr. Chief Justice Burke and Mr. Justice Campbell concur.