No. 11,923.

Wilson v. Monte Vista Potato Growers' Association.

Decided October 17, 1927.

Action for damages for violation of marketing contract. Judgment for plaintiff.

*Affirmed.*

*On Application for Supersedeas.*

1. Marketing Contracts—*Landlord and Tenant.* A renter who leases land with the knowledge that his landlord has entered into a contract with a co-operative association for the marketing of his products, is charged with knowledge of the provisions of the statute concerning such contracts.

2. Landlord and Tenant—*Lease—Marketing Contracts.* The provisions of the statute concerning co-operative marketing constitute an essential part of a lease between the owner of land, who is a party to such a contract, and his tenant who has knowledge of the contract, as much so as if its provisions were incorporated in the lease.

*Error to the District Court of Rio Grande County, Hon. Jesse C. Wiley, Judge.*

Messrs. Stephenson & Martin, for plaintiff in error.

Messrs. Lindsey & Larwill, Messrs. Corlett & Newcomb, for defendant in error.

Department One.

Mr. Justice Whitford delivered the opinion of the court.

The suit below was brought by the Monte Vista Potato Growers' Co-Operative Association, against W. J. San-

derson and Milo Wilson, for the breach of a marketing contract. The plaintiff had judgment for damages, attorney's fees, and injunction for specific performance. Wilson alone comes here with a writ of error, to reverse the judgment, and prays for a supersedeas.

The facts out of which the controversy arose are as follows: The plaintiff below was a co-operative marketing association, organized under the provision of the statutes of this state. The defendant, Sanderson, entered into a contract with the association in June, 1923, which provided among other things that Sanderson, as a member of the association, would help carry out the aims of the association for co-operative marketing, and help to stabilize the potato markets, and to that end the association agreed to buy, and Sanderson agreed to sell and deliver to the association all of the potatoes produced by him during the years 1923, 1924, 1925, 1926 and 1927, except such as he might reserve for seed, feed and family use, or for sale at retail locally for immediate consumption; that Sanderson warranted that he had not theretofore contracted to sell or deliver any of his potatoes to any person, or corporation; that he should not be required to deliver any specific quantity of potatoes per year, but did agree to deliver all of the potatoes produced or acquired by or for him, or over which he had legal right to exercise control.

The agreement was one of a series of agreements similar in terms, between other potato growers and the association; that Sanderson agreed therein that in as much as it would be impracticable and extremely difficult to determine the actual damage to the association, if he should so fail to sell and deliver all of his potatoes to the association under the terms of said contract, to pay a sum equal to twenty per cent of the current market value thereof at the time of the breach, or approximately at such time, as liquidated damages for the breach of said contract, and that in that event, the association should be entitled to an injunction to prevent further breach, and

a decree for specific performance, and in the event of a suit for the breach of the contract Sanderson agreed to pay the association all costs of court, cost of bonds, expenses of travel and expenses caused by the litigation, and a reasonable attorneys' fee incurred by such proceeding. That Sanderson entered into a contract with the defendant, Milo Wilson, whereby he leased to Wilson certain lands which Sanderson then owned, for the raising of potatoes during the cropping season of the year 1925, and that at the time of the execution of the lease Wilson knew that Sanderson was a contract signer with the association, and knew of the terms and conditions of the contract; that under the terms of the lease Sanderson was to receive one-fourth of the potatoes raised on the leased premises, and Wilson was to receive three-fourths. That during the season of 1925 Wilson produced 270 tons of potatoes on the land leased to him by Sanderson, and retained and sold three-fourths of the crop in the Eastern market, contrary to the provisions of the contract made between Sanderson and the association.

We have stated the facts of the case with unusual fullness, for the purpose of showing the similarity of the facts in the case at bar with the facts as they appear in the opinion of Justice Sheafor in *Monte Vista Potato Growers' Co-Operative Association v. Bond,* 80 Colo. 516, 252 Pac. 813. We have compared the record in that case with the record in the instant case, and we find the marketing contract in the Bond case almost identical in its provisions with the marketing contract in this case, and every substantial proposition of law advanced there is renewed here, and again urged upon our attention. We think the decision in that case is controlling here, and consequently, decisive of the case at bar. We there held that the statute ''creates a conclusive presumption that the lessor is able to control the delivery of products raised on his land by tenants or others.'' Wilson was charged with the knowledge of the provisions of the statute. He knew that Sanderson was a contract member of

the association, and with this knowledge of the statute, and of the contractual relation of Sanderson with the association, Wilson assumed to take a lease from Sanderson to raise potatoes on the leased land, with the intention of selling them in the Eastern market, and not to deliver them to the association, in disregard of the direct provisions of the statute and of the contract between Sanderson and the association. The provisions of the statute constitute an essential part of the lease, as much so as if its provisions were incorporated therein. Equity will not lend its aid to Wilson in his unconscionable undertaking to assist Sanderson in breaking his solemn contract with the association, which bound Sanderson to deliver to the association the potatoes raised upon his land by his tenant.

The decree allowed defendant in error $30, for cost of bond, whereas the trial court found the sum so expended by the association to be $20. The defendant in error filed a disclaimer in this court, and offered to remit the sum of $10. The decree should be corrected to read $20, instead of $30, for cost of bond. The court below is directed to award judgment accordingly.

We have considered all the assignments of error urged upon our attention by plaintiff in error, and we find no reversible error.

Judgment affirmed.

MR. JUSTICE DENISON, sitting for MR. CHIEF JUSTICE BURKE, MR. JUSTICE SHEAFOR and MR. JUSTICE CAMPBELL concur.