No. 12,118.

MOUNTAIN STATES BEET GROWERS MARKETING ASSOCIATION
v. MONROE.

Decided July 9, 1928.

302

Messrs. LINDSEY & LARWILL, Mr. D. K. WOLFE, JR., Mr. THOMAS A. NIXON, for plaintiff in error.

Messrs. COEN & SAUTER, Messrs. McCONLEY & McCONLEY, for defendant in error.

Mr. CALDWELL MARTIN, amicus curiae.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE plaintiff is a grower of sugar beets upon his own lands in Logan county. The defendant is a corporation organized under our Co-operative Marketing Act (S. L. 1923, p. 420), of which incorporated association the plaintiff is a member. This statute, among other things, provides that eleven or more persons, a majority of whom are residents of Colorado, may form a non-profit co-operative association, with or without capital stock, to engage in the marketing or selling of the agricultural products of its members. The defendant association was organized without capital stock and the plaintiff was thereafter admitted as a member in accordance with the statute and the rules and regulations of its board of directors. After the expiration of the term of its first board, named in the certificate of incorporation, directors are to be elected by its members. Such an association has the power to engage in any activity in connection with, and incidental to, the marketing of agricultural products. The affairs of the association are managed by this board,

which has power to make appropriate by-laws. The by-laws of this association provide for a recovery as liquidated damages of a definite sum to be paid by a member upon the breach by him of any provision of the by-laws or marketing contract regarding the sale or delivery or withholding of products, and such provision for liquidated damages shall be enforceable as such and is not to be regarded as a penalty. Section 29 of the statute declares that associations organized thereunder shall not be deemed in restraint of trade or a monopoly, or an attempt arbitrarily to fix prices, nor shall authorized marketing contracts between the association and its members be considered illegal as such or as in restraint of trade. These provisions of the statute are involved in this case.

The working plan adopted by the sugar company purchaser, the defendant association, and its members may thus be stated: Defendant association enters into a separate agreement with each of its members by which he constitutes it his sole agent for the purpose of marketing and contracting for sale all sugar beets to be grown by him or for him within the state during each year, and from year to year thereafter, subject to the right of either party to the contract, at the end of any year by written notice delivered to the other party on or before November 1 of each year, to terminate the same. In legal effect it is a one-year contract at the option of either party. The association agrees to endeavor to market for the grower the beets which he produces whenever and wherever a market may be found which, in its judgment, shall justify such marketing, with a view to obtain for the grower a fair and profitable price for his beets with the express aim of obtaining not less than a fifty-fifty contract; and that the association shall not be liable for any damages that the grower may sustain, provided no sale of beets is made, if in the judgment of the association the price offered is not satisfactory. The contract further provides that the same shall not be held to de-

prive the grower of full control over his acreage and production, but that all sugar beets which he shall harvest in whatever amount shall be subject to the contract. One of the promises of the grower is that he will not "sell or grow or contract to grow" any sugar beets, except under the terms of the contract, and at a price approved by the association. There is another provision in which the grower is required to declare his intention to grow a given number of acres during each season, provided a marketing contract shall have been procured by the association prior to planting time. When such a contract is entered into between the defendant association and a grower he is then permitted, and not before, to enter into a contract with the Great Western Sugar Company, which is the only purchaser of sugar beets in northern Colorado, and the only buyer to whom sales can be made. Attached to the form of the contract between the grower, and the Great Western Sugar Company which the company has adopted and uses, is a rider which provides that the contract in question is subject to the rights of any co-operative marketing association, of which the grower is a member, to contract for the grower for the sale of beets and, if the grower is thus qualified, i. e., by virtue of his contract with the association, to enter into a marketing contract with the sugar company, the contract is binding upon both parties; but if a grower is not thus qualified to execute the contract with the sugar company, the latter, on or before the time of the harvesting of the beet crop, has the power to purchase or contract to purchase the beets from or through those legally qualified to market or contract for the sale thereof—that is with the association. It seems to be conceded here, that under this plan, recognized by the three parties concerned, the sugar company will not purchase or contract to purchase of a grower until a contract of purchase for the given year has first been secured or offered that is acceptable to and approved by the association.

During the current year of 1928 the association and the sugar company have not been able to agree upon the terms of a contract for marketing of the 1928 crop to be produced by the members of the association. The plaintiff in this action, Monroe, a member of the association, when planting time arrived, which is about April 10, having ascertained that no such contract had been made or secured, or would be tendered, asked to be released by the association for the year 1928 from the obligations of the association contract resting upon him, so that he might be free to enter into a contract himself with the purchaser for the sale of his beets; but the association refused to release him. Thereupon he brought this action, which, in form, is in the nature of a suit in equity to enjoin the defendant association from enforcing against him the terms and provisions of their contract, and to compel the defendant to refrain from all attempts to enforce against him the penalties therein provided, and to release him from its obligations for this year. Defendant's answer alleges that for months previous to the beginning of the month of April, 1928, it had been negotiating with the sugar company in attempts to secure a fair and satisfactory price for beets to be grown during the year 1928 on the plaintiff's lands, and the lands of its other members; that the sugar company, during the negotiations, has only submitted to it one form of contract; that this form was not at a fair and profitable price satisfactory in its judgment, and its refusal to accept such contract was duly approved by a majority of its members; that, although such negotiations with the sugar company for a contract have continued for months, up to the time of filing of the answer they have not resulted in providing any market for beets to be grown in 1928 by the plaintiff, which would, in its judgment, justify marketing of them. In a replication plaintiff denied affirmative matters of the answer.

Upon issues thus joined there was a trial to the court without a jury. An application for a preliminary injunc-

tion was made and most of the evidence that is embodied in the transcript here was taken on that application. The court, at the close of the hearing upon this application, granted the temporary writ, whereupon, by agreement of the parties, the evidence taken upon the preliminary hearing was to be considered by the court upon the final hearing and at the final hearing additional testimony was taken. The court made findings of fact and entered a decree in favor of the plaintiff, which, in substance, released and discharged him from his obligations under the 1928 contract relating to the growing or marketing of the sugar beet crop during that year, and enjoined the threatened acts of the defendant to restrain and prevent plaintiff from planting, growing or harvesting or selling, or contracting to that end, a crop of sugar beets in 1928, and restrained the association from imposing any of the penalties prescribed by the contract. The court specifically found, among other things, that the defendant association is unable to perform the terms of its contract with the plaintiff and that its refusal, either to market plaintiff's crop or to release him from the contract and permit him on his own behalf to market his crop, is arbitrary, unreasonable, wilful and without just grounds or excuse, is not the exercise of any discretion vested in the defendant, but constitutes a breach of its contract with, and a wrongful oppression of, the plaintiff. The court further found that the particular contract between the plaintiff and the association, which is one of a series of many contracts with its members, must be construed together and in connection with all other contracts of other growers in the same field or district, and also with the contract which the growers make with the sugar company. The court also found that the contract was in restraint of trade and, as construed by the defendant, would operate to restrict or decrease production in order to enhance price, and that plaintiff was also released from the contract for a failure and refusal by the association to

obtain for the growers a marketing contract by planting time.

For our own convenience we state the respective contentions of the parties in the order they were advanced at the trial below, and as repeated here: (1) Plaintiff says the contract between these parties, as do many similar contracts with other members, provides for, and was intended to accomplish, a positive, not a mere incidental, restriction upon production of sugar beets. (2) The association through such restriction is attempting to fix and control the price of an agricultural product. (3) With the arrival of planting time each season, which is from the 10th to 15th of April, the duty of the defendant is either to find a market, or, if unable to do so, to release its members to enable them individually to contract for themselves. (4) Defendant's refusal, in the circumstances that existed, to accept the marketing contract tendered by the sugar company is illegal, arbitrary and unlawful, and likewise released the plaintiff from his obligations under his contract with the defendant.

The defendant's contentions are that though the plaintiff thus sub-divides his points, the real and only question, except the alleged breach of its contract with the grower, is whether the marketing contract involved is authorized by the Co-operative Marketing Act, and that its disposition disposes of the entire controversy in its favor.

Both parties, however, desire an expression of opinion by us on each and all of these propositions, and upon all the findings of fact and of law of the trial court. Interesting and important as these questions are to the parties and helpful as our answers might be to them, we think we should not comply with the request in its entirety, even though the district court in its rulings on evidence and in its findings and decree expresses its opinion on all of them. A determination of the first three of plaintiff's propositions would require us to investigate and pass upon grave and far-reaching questions of constitu-

tional law, both federal and state, and as to those arising under the federal Constitution our decision would not be final, but subject to review by the ultimate authority. It is the general rule and practice both in the federal and state courts not to pass upon constitutional questions unless it is essential to the disposition of the pending cause. Decision of neither of these three propositions is necessary at this time because an affirmance of the decree may well be made on the fourth ground, which disposes of the entire case.

There is another and persuasive reason why we should thus restrict our decision. During the oral arguments before us we were informed by counsel that after the findings of fact by the district court were announced, and its decree thereon entered, contracts for the present crop were made between the sugar company and the growers which contain a provision that they shall only be binding if this judgment is affirmed. Hence its affirmance upon any ground not only disposes of this case, but settles the immediate controversy in the great industry; and, since these contracts are terminable any year, may, for aught we know, finally dispose of it. After the writ of error was issued for a review of this decree it was advanced upon our hearing docket out of the usual order. An abstract of the record was dispensed with, and when the briefs of the respective parties were filed, we again advanced it out of its usual order for oral argument. The parties are pressing for a hearing before final adjournment, which will be taken on the day of announcement of our decision. Considering the vast interests involved and the importance of the decision to those engaged in a great industry, that they may have our views before the season of harvesting beets in the autumn begins, we are complying with their request. Within the limited time at our disposal, we think we should not depart from the established practice of reviewing courts, in passing upon important constitutional questions, even though the parties desire it, if the decision of the controversy can

be based, as it may be here, upon other and substantial grounds.

We come now to a consideration of the fourth proposition upon which the district court probably chiefly relied in making its findings and decree. In resting our affirmance thereon—the arbitrary and unlawful act of the defendant association in failing or refusing to make a marketing contract, and coupling with its offer to make one for 1928 that was acceptable to it, the condition hereinafter referred to— we are assuming with the defendant, as we may, and as already decided by us in other cases, that our Co-operative Marketing Act of 1923, in its main features, is a proper exercise of legislative power, and, without so deciding, that this co-operative marketing contract is authorized thereunder. Before the enactment of this statute, such contracts as we are now considering would be against public policy. *Burns v. Wray Company,* 65 Colo. 425, 176 Pac. 487. In *Rifle Potato Growers Association v. Smith,* 78 Colo. 171, 240 Pac. 937; *Monte Vista Potato Growers Association v. Bond,* 80 Colo. 516, 252 Pac. 813, and *Wilson v. M. V. P. G. Association,* 82 Colo. 428, 260 Pac. 1080, we held that public policy of a state is what its legislature declares it to be, and such contracts as are within the scope of the 1923 act are not void as against public policy.

The specific questions now before us were not passed upon in either of the three cases mentioned. The contract of sale tendered by the sugar company to the defendant association, when first presented, was rejected by the defendant as not satisfactory. This rejection was within the scope of defendant's discretionary power, and if such power was not arbitrarily exercised, it might reject the contract notwithstanding the plaintiff and other growers may have approved of it. The trial court specifically so found. The contract between these parties provides that in case of such rejection the association, as selling agent of the grower, shall not be subjected to damages for such failure. The contract, however, is

entirely silent as to what the rights of the grower are with respect to a sale by himself. In this case, notwithstanding the fact that the association made several subsequent efforts to secure a marketing contract that it deemed satisfactory, it was unable to do so and notified the plaintiff of its failure. Thereafter the defendant made a counter proposal to the sugar company in which it stated that the tendered contract previously disapproved by it was now acceptable in all its terms, and that it would accept and approve the same, if the sugar company would, at the same time, enter into another marketing contract with it for the purchase of beets of its growers for the three subsequent years of 1929, 1930, and 1931, on terms proposed, or to be proposed, by it. The sugar company refused to enter into a contract for the purchase of beets beyond the current year, upon the ground, among others, as we understand, that the price of sugar manufactured from the beets depends in a measure upon the world market for sugar. The plaintiff then brought this action to obtain his release from his obligations under the contract with the association, and the district court granted relief, as stated. The trial court rightly ruled that these several contracts should be construed together. So doing we find that by the contract between the plaintiff grower and the association, either party thereto may on or after the year 1924, terminate the same at the end of any year by giving written notice to the other on or before November 1st. The plaintiff (and for aught we know all other growers) might desire before November 1, 1928, thus to terminate his contract with the association and if so would have no interest whatever in any marketing contract beyond the time of his withdrawal. His contract rights may not be made to depend upon, or be affected by, a proposed contract which the association wished to make for three years after the grower had terminated it. The finding of the trial court that, in the light of the surrounding facts, such conduct and behavior on the part

of the defendant was arbitrary and wilful, without just ground or excuse, and not the exercise of any discretion vested in the defendant, and constitute a breach of its contract with the plaintiff and the wrongful oppression of him, is abundantly sustained by the evidence which we have recounted. It is too plain for further discussion. So far as concerns their respective duties, the relation of this co-operative marketing association to its members is not materially different from that which exists between the directors of a corporation, organized for profit under our general corporation statute, and its stockholders. This relation is that of a trustee to his beneficiary, or as here, between a principal and his agent. Equity exacts of a trustee, or one acting in that capacity, the utmost good faith to those whom he represents, and by whom he is selected as trustee to protect and advance their interests. When the defendant association declared its approval of the tendered marketing contract as to all of its terms, and offered to sanction the same if the sugar company would make another contract with it for three additional years on the defendant's own terms, and the sugar company refused to do so, and the association still refused to release the plaintiff from his obligations under the contract, or permit him to market his own crops, this was a manifest abuse of the legal discretion which it had, and plaintiff was released from his obligations for the year 1928. The findings and decree of the trial court were unquestionably right and the decree is accordingly affirmed.

Mr. Justice Burke and Mr. Justice Whitford concur. Mr. Justice Adams concurs specially. Mr. Chief Justice Denison, Mr. Justice Butler and Mr. Justice Walker dissent.

Mr. Justice Adams specially concurring.

It occurs to me that the most powerful and unanswerable argument in favor of the affirmance of the judgment,

has been put in the hands of the growers by counsel for the association themselves. Whatever may be said for or against the slowness or deliberation, and ultimate failure of the association to sell the 1928 beets, there was no lack of interest when the case got to this court. We were asked to advance it on the calendar, which we did. On June 7, 1928, a joint motion was filed by all of the attorneys for the litigants, and signed also by the attorney for the sugar company. They asked for an oral argument at the earliest possible date, "because of the public nature of the matters herein involved affecting many thousands of persons directly or indirectly." A few days later—June 12, counsel for the association filed a separate motion, again asking for a prompt hearing, on numerous grounds. We were then told that the sugar beets would be harvested from many thousands of acres of lands in Colorado this year; that the harvesting in northern Colorado begins early in September of each year; that the only purchaser of sugar beets in the localities where most of the members of plaintiff in error association have their farms is the Great Western Sugar Company; that the beets must be delivered for the manufacture of sugar as soon as they are harvested, "and said beet crop must be harvested within a short period of time."

We are told also in the motion referred to, of the uncertainty as to title, that is, the right to sell the beets; that the district court's decision had rendered it uncertain, and that unless we consider the case and decide it by harvest time, the uncertainty will continue, "and grievous harm will result not only to the growers of the beets but also to the public generally, and in particular to the bankers, merchants, laborers, and to all others who have an interest in said beet crop by virtue of mortgage, pledge or otherwise, all of whom are directly or indirectly dependent upon the proceeds of sugar beets to be so grown." Further, it is said by counsel for the association, unless the case be decided by harvesting time, "it is

inevitable that many lawsuits will result and there may even be disturbances of the public peace.''

After painting this black picture, one would naturally suppose that the association would offer the alternative of a brighter side if the case be reversed, but it has failed to do so. On the contrary, if the case be reversed and a new trial be ordered, the crops might rot or freeze while the litigation flourished. If the association's demurrer to the complaint be sustained, it would be just as bad, for although it is now July, the association has not made a contract with the sugar company, and can make none, so far as we are told, better than the one that the grower made, after waiting for the association to act. In fact, we have not been advised that the association could even make that one now, though the grower can and has done so, subject to the court's approval. The longer the uncertainty continues, the worse conditions become. Some growers may be able to stand it, but others, less fortunate, like Monroe, apparently cannot. It thus not only appears from this record, and from the statements of counsel for the association, that this cause must be decided before marketing time, but it likewise appears that an immediate decision is necessary because those who have planted under the qualified contract are now greatly embarrassed in their financing operations. Merchants and bankers are loath to extend credit on the faith of a crop now planted and growing which may never be marketed, or marketed only at a tremendous loss. That embarrassment, however, would not be relieved, but on the contrary would be magnified into ruin, by a reversal.

It was said by Mr. Justice Brewer in *Montana Co. v. St. Louis Mining and Milling Co.,* 152 U. S. 160, 170, 14 Sup. Ct. 506, and it applies here: ''Indeed, it may be said to be generally true that the weaker a party and the smaller his interest, the greater the need of the strong hand of the court, to ascertain and protect his rights.'' I am sure, though, that every member of this court agrees with the trial court that the board of directors of

314

the association are honest in their interpretation of the contract.

Whether the grower will be released in all cases if the association fails to make a sale of beets by planting time, that is, whether time is of the essence in this respect, it is unnecessary to say, because we have now arrived at a place far beyond planting time. Counsel for the association have only recently said in their motion that the beet crop must be *harvested* within a short period of time. The contract must be performed within a reasonable time. In the nature of things, particularly with reference to annual crops, performance of a contract might be postponed or delayed to such an unreasonable extent that it amounts to no performance, or to a breach of contract. A mere reference to the above facts stated in the motion of plaintiff in error, is enough to show why the period of termination has been reached.

Copious citations of authorities are unnecessary to show the extent to which the highest court of the land, as well as state courts, including our own, have gone in upholding the legitimate exercise of the statutory powers of co-operative marketing associations. Decisions are collated in *Liberty Warehouse Co. v. Burley Tobacco Growers' Co-op. Marketing Ass'n,* (U. S.), 48 Sup. Ct. 291, 72 L. Ed. 292. Among the citations is *Rifle Potato Growers Co-op. Ass'n v. Smith,* 78 Colo. 171, 240 Pac. 937. Our attention is not called to any case, however, where an abuse of an association's power, or an ultra vires act by such corporation, or breach of its contract, has met with judicial sanction, or that it cannot be corrected. If this were so, such corporations would certainly be in a class by themselves, beyond the law, and it would defeat their own ends if vested with such supreme power, not subject to restraint. The growers are the principals, or masters; the association is the agent or servant. It was written long ago, "The servant is not greater than his lord." In the nature of things, it is still the law.

Counsel bring up and argue certain constitutional provisions, like due process of law, and the validity of certain features of the co-operative marketing act, and so on, but they are not necessary to the determination of the cause. It is a universal rule under such conditions, not to pass on them. Mr. Chief Justice Taft said in *Howat v. State of Kansas,* 258 U. S. 181, 184, 42 Sup. Ct. 277, in speaking of a Kansas statute, involving compulsory arbitration between labor and capital: "Obviously we should not pass upon the constitutional validity of an act presenting such critical and important issues unless the case before us requires it." The case from which we have quoted was cited in *Fox Film Corporation v. Trumbull,* 7 Fed. (2d) 715, 721, wherein the court says: "The federal courts do not consider the constitutionality of a state statute, unless the case before the court makes it necessary." In *Gale v. Statler,* 47 Colo. 72, 105 Pac. 858, Mr. Justice Campbell, for the court, says: "It is thoroughly established in this jurisdiction, to which the citation of our decisions is unnecessary, that a constitutional question will not be passed upon unless it is essential to the determination of the case in hand." *Gale v. Statler,* was cited with approval in an opinion by Mr. Justice Denison, in *Murray v. County Commissioners,* 67 Colo. 14, 16, 185 Pac. 262. Speaking of a constitutional question, the Justice there said: "We do not decide the second point, because it is a constitutional question which would require the full bench, and it is not necessary to determine the case." To like effect: *People v. Pirie,* 78 Colo. 361, 365, 242 Pac. 72; *Platte Land Co. v. Hubbard,* 30 Colo. 40, 69 Pac. 514; *Joralman v. McPhee,* 31 Colo. 26, 36, 71 Pac. 419; *Gutshall v. Kornaley,* 38 Colo. 195, 200, 88 Pac. 158; *Chambers v. People, ex rel Storer,* 70 Colo. 496, 499, 202 Pac. 1081.

The business of the court is to decide pending cases, not abstract legal subjects, constitutional or otherwise, disconnected with the case or unnecessary to the decision, however desirable it may be to have such themes dis-

cussed. See our unanimous decision en banc, opinion by Mr. Justice Burke, in *Gabriel v. Board of Regents,* 83 Colo. 582, 267 Pac. 407; also *Olney Springs Drainage District v. Auckland,* 83 Colo. 510, 267 Pac. 605.

The court rejected certain evidence of the association, tending to show that the price was not fair nor just for 1928 beets, which price the association had previously agreed to, and which the sugar company and a large number of growers were and are willing to accept. Counsel for the association complain of this refusal to admit evidence, but I think without justification. Although such evidence was rejected at certain stages of the trial, it was admitted later. The witnesses went into the question fully; the evidence was cumulative; and if it be conceded that the witnesses would have repeated or have said all that counsel supposes, still the judgment should stand. The striking feature of it is, that the association complains because of the supposed failure to let in evidence which would tend to show that the association itself proposed a contract with the sugar company, or agreed to it, that was unfair to its principals, the growers, which proposed agreement was accompanied by a condition that the sugar company would bind itself to future years, in respect to a matter about which the association was not authorized to negotiate. In other words, two wrongs or mistakes, instead of one. "A court will not presume a state of facts injurious to fair dealing and common honesty." 10 R. C. L. 883, and cases there cited. With such unanimity as to price on the part of the parties interested, the presumption is that it was fair, and it is unusual, to say the least, for a party to come into court and ask to be allowed to rebut the presumption of its own fairness to its principals. It is not permissible if the principal objects.

One must be unconversant with the record to suppose that it appears therefrom that the association, in the proposed agreement with the sugar company, continued its objections to the alleged unfairness or inadequacy of

price. On the contrary, the second paragraph of the instrument in question contains this clause: "The directors of the Mountain States Beet Growers Marketing Association hereby *approve and recommend* to the member growers the contract proposed by the Great Western Sugar Company for the growing of beets for the year 1928 with the added clause  *  *  *  " etc. (The italics are mine.)

The material parts of the added clauses are covered in the opinion written by Judge Campbell.

Counsel for the association seek to avoid the significance of the proposed contract in question, with the added stipulations for ensuing years, by calling it a "compromise offer." However, if this is what it was, and it is so denominated, it must also be remembered that such attempted compromise related to the very matter that the association was in duty bound not to unnecessarily compromise or sacrifice, but to protect, namely, the price of 1928 beets. To sell them for the best price obtainable, was the association's chief business, not to barter the growers' rights for something that they had not asked for, i. e., stipulations for future years, however desirable it may have seemed to the officers of the association to bring this about. In the light of this, the expression, "compromise offer," becomes of doubtful euphony. I am fully persuaded that the association officers did not break faith with the growers by offering or agreeing to an unfair price; indeed, most if not all of such officers are growers themselves. Much as it is desired that the highest price for beets be obtained, I fear that even the present price has been put in jeopardy by the delay, and that the grower's request that he be released should be granted. But I base my conclusion on grounds of the growers' rights, not expediency.

It is also a mistake to suppose that the offer which is termed a "compromise offer," was the only evidence of fairness and adequacy of price. There was a great deal of other testimony, some for, and some against. It has

been said so often that the expression has become stereotyped, that appellate courts are bound by the findings of fact by trial courts, when the evidence is conflicting. I might indulge in quotations from every justice that ever sat on this bench in support of this proposition, but it is unnecessary. The findings, general and special, were for the grower.

I agree with the majority opinion, as expressed by Mr. Justice Campbell, and I am authorized to say that he, as well as the other justices who have concurred therein, also agree with me in that which I have said above.

Mr. Justice Walker dissenting.

I dissent. The association's material promises as set forth in the contract were as follows: "The association shall endeavor to market said sugar beets for the grower whenever and wherever a market may be found which in its judgment shall justify such marketing, and shall * * * make * * * such other effort * * * for the purpose of enabling the grower to obtain a fair and profitable price for his beets, with the express aim of obtaining not less than a 50-50 contract, and upon the express understanding and agreement that it shall not market the same unless a contract shall be obtained therefor, or for such portion thereof as it shall sell on what is known as a 50-50 basis, and the association shall not be liable for any damages that the grower may sustain, provided no sale of beets is made, if in the judgment of the association the price offered therefor is not satisfactory."

Upon the part of the plaintiff the contract contained, among others, the following stipulation: "The grower further promises and agrees not to sell or grow or contract to grow any sugar beets in such territory directly or indirectly except under the terms of this contract and at a price approved by the association."

I agree with the majority of the court that if the association, having found a market at a price which in its judgment was satisfactory, refused to sell except upon

terms which it had no legal right to impose; or if the disapproval by the association, of the price offered, was such an unreasonable act as to amount to bad faith and abuse of trust on the part of the association, this would constitute a breach of the contract entitling the grower to be released. I agree, further, with the view expressed in the majority opinion, that the contract right of the grower, to have a bona fide and diligent effort made by the association to obtain a satisfactory market for his product for the current year, could not, under the terms of the instant contract, be defeated or affected by considerations relating solely to subsequent years. If, therefore, a breach by the association, such as I have defined, was pleaded, sufficient evidence thereof adduced, and an affirmative finding made upon that issue, and if competent evidence to the contrary was not rejected by the trial court, the judgment should be affirmed.

The record, however, does not disclose such a situation. The complaint, instead of alleging that the price offered was satisfactory to the association, alleges the contrary. It does allege that the refusal and failure to market was "without reason, willful, arbitrary and in violation of the marketing contract." What facts justify these epithets and this conclusion, the complaint does not say, unless it be because, as it is alleged, the offer was "fair and reasonable"; but, as later shown, the trial court refused to receive evidence to support the denial of this allegation. The learned trial judge found, as stated in the majority opinion, that the refusal either to market or to release the plaintiff was arbitrary and unreasonable. From this it is a fair inference that the arbitrariness was deemed by the court to inhere in the refusal of the association to release the plaintiff from his contract. Whether this is the correct interpretation of the finding or not, and although we add to it the general finding in favor of the plaintiff, it is impossible to be sure what phase or part of the association's conduct was so adjudged to be arbitrary. The majority opinion, however,

sees both the significance of, and the support for, this finding, in the fact that toward the latter part of March, 1928, the association submitted to the sugar company an offer to approve the sugar company's price for 1928, conditioned, however, upon stipulations to be made by the sugar company for prices for the three subsequent years. This proposition, however, was rejected by the sugar company. It created no legal relations between the association and the sugar company, or between the sugar company and its members, and it altered none. The approval offered never became effective. When, some weeks after its rejection, the plaintiff demanded his release from the association, and instituted this action, the proposition which the association had so made, had taken its place along with the other incidents of the fruitless negotiations. That it had been made was of no more significance than the making of other offers and counteroffers. Its sole relation to the case was as an evidentiary circumstance. That it was nothing more is sufficiently shown by the omission of the plaintiff to plead it when stating the ultimate facts upon which he relied. Isolated and unexplained, it might have some tendency, as an admission by the association, to show that the price was in fact not unreasonable for 1928. Whether it had any tendency to show that the association regarded it as in itself satisfactory for the current year (which, as the majority opinion rightly holds, was the test) may be doubted, in view of the fact that by its terms it was made conditional upon concessions for the future. But when the proposition so submitted is examined in the light of its context; when the evidence shows that for weeks before making the proposition, the association had flatly rejected the sugar company price for 1928, and insisted upon a higher price, and that such rejection by the association was continued after its own offer of March had been refused; when it appears that the motion by which the association's board made the latter offer, expressly denominated it a compromise proposition, and carefully

avoided any declaration that the price was then acceptable to the association; when it is indisputably shown that it was a desperate expedient intended to avoid if possible the catastrophe of no contract at all for the 1928 crop, it seems, in my opinion, an undeserved return for the spirit of conciliation, to seize upon this guarded concession and hold it to be the exclusive and final expression of the attitude of the association. Compromise offers are not generally admitted at all as evidence, and certainly I can not regard this one as sufficient proof to sustain a finding of arbitrary action upon the part of the proponent of the offer. The majority opinion, however, must go further, and not only hold it sufficient evidence, but also, that it was conclusive. For it attaches no importance to the rejection by the trial court, of repeated offers of evidence, made by the defendant association, to show that it had never approved the 1928 price tendered by the sugar company, that such price was not fair and reasonable, and that it was below the 50-50 minimum prescribed by the grower himself in his contract. These rulings were invariably placed upon the ground that the evidence so offered was immaterial, although in a few instances other grounds were also assigned. The rejection of these proffers was clearly error, if the court was investigating the issue of abuse of discretion; and if it was not, the judgment can not be affirmed upon the ground that the court found such abuse to have occurred.

Holding these views regarding the ground upon which the majority of the court affirm the judgment, I can not decline, notwithstanding the speed with which this case has been pressed and now disposed of, to reach conclusions upon the other questions presented, and which are necessarily involved in the decision of the cause. The serious constitutional questions regarding the Co-operative Marketing Act have already been determined by this court in the cases referred to in the majority opinion. Price fixing incidental to co-operative marketing through a common agent can not be obnoxious to the public policy

established by that act. Such restriction of production as might occur under the contract here involved, is also but an incident of the co-operative system. The enhancing of the price to the grower is sought by collective bargaining, and not by creating a scarcity in the supply, for the latter condition could be of no benefit to the growers, who, by their common factor, had declined to grow any beets at all, for what they deemed an inadequate return. The only federal constitutional question suggested relates to contracting away the right to follow a lawful pursuit. No case has been cited which holds, or even suggests, that an agreement to abstain for one year, from raising a specified crop, in aid of a design validated by statute, so much as approaches the line where the constitutional inhibition takes effect. Whether the powers conferred by the Co-operative Marketing Act may not be restrained if used to oppress the consuming public, is a question not presented by the facts here, either pleaded or proven.

The contract binds the grower to sell only through the association. The only provision it makes for releasing him from this obligation is that for the giving of notice upon November of any year. The association does not agree to market at all events. It follows that the failure to market is neither a breach of the contract, nor the happening of a contingency upon which, either at planting time or later, the grower is, by contractual provision, at liberty to make his own sale. It is not pointed out in what respect the promise of the grower or that of the association, as embodied in the present contract, is either more or less than that authorized by the Co-operative Marketing Act; and the right of the association to refuse, in its lawful discretion, to sell, without thereby releasing the grower, is but the result of these promises.

I am of opinion that the judgment should be reversed, and I am authorized to say that Mr. Justice Butler concurs in the views herein expressed.

Mr. Chief Justice Denison dissenting.

I cannot concur with the majority opinion. Its reasoning is that the defendant association's action was arbitrary, because, though it had disapproved the sugar company's offer and averred that it still disapproved it as to price, it made a counter offer by way of compromise by which it proposed that it would accept and approve the offer if the sugar company would at the same time enter into another contract for the three following years, since the association had no power to make a contract for future years. This argument I cannot follow. That the offer was unsatisfactory as to price was a good reason for rejecting it; if in the hope of gaining something for its constituents, the defendant, by way of compromise, as a compensation for inadequacy of price, asked something which it had no right to receive, how does that make arbitrary its rejection of a price which it in good faith believed inadequate? How can such a counter offer amount to a concession that the price was adequate?

If, as the majority opinion assumes, the defendant's board had said, in effect: Your offer is reasonable but we will not accept it unless you extend it to cover three additional years, I agree that that would be beyond their powers and might justify the present judgment, but such a case is not in the record as I read it.

It is said, however, that, upon conflicting evidence, the court has found the offer of the sugar company to be reasonable and its rejection arbitrary; but it seems that much evidence and many offers of evidence to the effect that the offer was unreasonable and not 50-50 were rejected, such finding, therefore, cannot be held conclusive. This is made plainer by the fact, which is shown in several places in the record, that the court rejected this evidence on the theory that it was irrelevant because the defendant's directors had no right to reject the best offer they could get even though such offer came from the one possible purchaser, and was in their opinion not reasonable

and they hoped it was not the best they could get. The findings do not conclude us if proper evidence on the point was rejected.

This conclusion would make it necessary to determine the main question in the case, which the conclusion of the majority rendered unnecessary, viz: Whether the district court was right in the proposition that the board was bound to sell by planting time or release all the contracts with the growers. I cannot assent to that. These contracts, it seems to me, are such as we have already approved in the cases cited in the majority opinion, and so may lawfully and therefore must be pursued with efficiency and construed to that end. We must say then, must we not, that the directors of defendant are not bound to sell at any price but may reject any and all offers till they get one which they think reasonable, even to the extent of failure to sell, so long as they act in good faith. The grower's remedy is to quit the following November, according to the contract.

If we do not say this we leave the defendant with no power but to accept whatever the lone purchaser chooses to offer, i. e., with no power at all. This reduces a valid contract to a nullity and so cannot be right.

The constitutional questions raised in the briefs I regard as already settled by many decisions in this state and elsewhere. I think the restriction of production, when any exists, is a mere incident, arising out of the circumstances of that particular year, not inherent in the terms of the marketing contract nor in the defendant's method of procedure.

It would follow that the judgment should be reversed.